The next case this morning is 5-23-0274, Ron & Mark Ward, LLC, et al. v. Bank of Herrin. Arguing for the appellant is Mark Johnson. Arguing for the appellee is Tom Hanson. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only that clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. Good morning, Your Honor. Good morning also to our non-video participants. Mr. Johnson, you're arguing on behalf of the appellant. Are you ready to proceed? Yes, ma'am. I am. All right, you may do so. Thank you, ma'am. Please, the court. I am Mark Johnson representing the Defendant Appellant Bank of Herrin. We're here appealing a preliminary injunction entered by John Sanders of Williamson County that effectively forecloses the bank from initiating any collection action against the wards. And that's the connection with their winter liability claims that they have against the bank was the initiation of this lawsuit. We're appealing because we submit that the plaintiffs have not established any of the five elements necessary for preliminary injunction. The first element that I'll address is, I think, a question of law, which is to be reviewed de novo by this court. And it has two parts. The first part is a procedural part, but they both have to do with the fact that we do not believe that the plaintiffs have a clearly ascertainable right that may be protected for or by preliminary injunction. The first procedural aspect of that argument is that there is no pending pleading at the time of the entry of the preliminary injunction in February and April of 2023 that even requested preliminary injunctive relief. The original 3rd, not original, but the 3rd amendment complaint. Add a count for declaratory judgment and did request. A preliminary injunctive relief, but that was reluctantly dismissed by the trial court because of the violation of the on my credit act. So, that 3rd amendment complaint and the claim for preliminary injunctive relief went away. And it was also based upon email agreements that the plaintiffs contended the bank entered into that modified the existing written business on agreements that that are before the court. And as I said, the trial court dismissed that, because the only credit access, it has to be in writing signed by both parties. And when the, the planets refiled, there, there are 4th amendment complaint, they have absolutely no request for preliminary injunctive relief at all. And they have no allegations of any of the 5 elements necessary for 3rd reasons. We think the court abuses discretion, whether that's a or not and on that procedural matter, but the most important 1 is the 2nd 1 and that is that the, the business on agreements do not provide them a protectable, right? Because they matured by their own terms on October 30th, 2022 now, there's a case that that actually, I brought to the trial court's attention that in an effort to try to give the court the benefit of the case law. That might be on the other side of this issue for me, and it was a gold case that cited in our brief that case. However, is in a positive case at bar for the reasons pointed out in our brief. Basically, that case involved an executory contract contract was still in effect. The status quo of the parties being the continuation of that contract. Unlike the case at bar, which is a maturity of a extended loan agreement on October 30th, 2022, the parties voluntarily entered into that business on agreement before this controversy started on in October of 2020. And they knew they're going to have to pay and they don't want to pay. They're showing the bank claiming that the bank. Failed to disclose to them or discover and disclose to them that they had bad employees that were double booking their loans. And the status quo, in our opinion, is that that loan to mature on October 30th, 2022 is the status quo. The most important case there, and we've submitted to the case to the court is the versus American Express. We believe that's directly on point and it's very similar to the case of bar. In fact, we think our case is even stronger than. Uh, the court and that's where basically a plaintiff sued American Express for terminating their agreement to provide credit card service to the customers. The court found and follow the Illinois Supreme Court decision that we cited the court to called the gates versus a village of well met, which says and held that an injunction will not be granted to restrain a party from discontinued performance under an executory contract. In this situation, our contract was fully executed on October the 30th, 2022, when it matured, uh, the, uh, the protectable right of the plaintiff to even ask for. Uh, pulmonary injunctive relief expired with it and so for those 2 reasons, we don't think the plaintiffs have made or establish the 1st element. 2nd element I'll talk about briefly is is irreparable harm. Plaintiffs are contending they'd be put out of business if we were to call their loans due and sue them in accordance with the, uh, they're agreed upon terms of expiration again on October 30th of 2022. We agreed with the trial court from both parties that we were going to submit the pleadings and affidavits and various arguments were done and the bank submitted an affidavit. The very plainly sets forth of considerable financial strength of the plaintiffs, the plaintiffs, individual guarantors and the principles of these entities. Are worth net worth in excess of 19Million dollars. They, there are several things stated conclusory fashion. I might add in the plaintiff's affidavit that says that they're going to lose their home. They're not going to be able to keep their business going, but they've supplied no accounting financial information that indicates that they're anything other than very financially capable and therefore wouldn't suffer irreparable harm. And again, we have a case that I think is directly on point and that's canter versus Eisenberg canter and Eisenberg versus Madison that we've submitted the court. So, no more Supreme Court case where attorneys apparently had a dispute over a landlord tenant issue, and they wanted to stop paying the rent and sought a preliminary injunction to stop paying the rent while they were just litigating that dispute. Similar to what's happening here. The appellate court was affirmed by the Supreme Court and said that no, you have the ability to pay that rent while this litigation is pending and await the outcome of the trial. And you therefore have suffered no reputable harm and that that particular case was not even mentioned and totally overworked by the trial judge and was submitted to him. And we contend that's an abuse of discretion, because this obviously does involve a question of fact, and that would be reviewed on the standard of abuse of discretion. Not as the 1st, 1 was. So, we believe the trial court abuses discretion and overlooking the canter case and not considering the considerable financial strength of the plaintiffs to undermine their claim that they, they don't have the ability to pay the debt and await the outcome of the trial. The 3rd element I'll do briefly, and that's an adequate remedy law. All these claims the plaintiffs bring are legal cause of action. None of them are equitable. The 4th amendment complaint before the court does not contain 1 equitable cause of action. They're seeking money and money only as a consequence by its very nature. They have an adequate remedy law. And again, the trial court made some notion, made some notation about struggling with that issue, but then made a conclusion statement. He didn't think the remedy was adequate with with no analysis. So, I have no idea what was in the mind of the trial court, but given the plain nature of the plaintiff's cause of action, all being legal, I submit to you that's abuse of discretion as well. Then you've got the last 2 elements that I'll cover briefly, and that was the 4th one is the likelihood of success on the merits. And I think when you combine the 1st, 3 elements, you've got a mature contract that cannot provide a protectable interest. You've got no irreparable harm, and you've got an adequate remedy law. I don't see how those add up to be anything other than plaintiffs not having a likelihood of success on the merits. And then finally, the balancing of the equities, which is the last 1 usually considered by the court. I don't think it's even necessary in this case, given the weak proof that the plaintiffs have put on with respect to the 1st and 2nd and 3rd elements of preliminary injunctive relief. For those reasons, we're asking this court to reverse. The trial court's decision entering the plenary injunction, I think, in the data that order is in the brief, it was April, the 20 April, the 12th or the 2023 and remanded back for further proceedings. Thank you, your honor. Mr. Johnson, the likelihood of success on the merits doesn't go to adequate remedy at large. It goes to whether or not plaintiff can prove its claim. Doesn't it? Yes, ma'am. That's true. I was using that collectively with the protectable interest and the irreparable harm and the adequate remedy law. But you're correct about that. But my argument is based on the fact that if you don't have a protectable interest and you don't have irreparable harm, I don't think you can ever have a likelihood of success on the merits. What about the bank's conduct here? Can you have a contract terminated, as you say it does, where the bank may have unclean hands? Well, there's no equitable cause of action in claiming the bank has unclean hands. They've sued us for breach of contract, saying that we had some obligation and we didn't fulfill it. And that's fine. That's what a trier fact is going to find. That's what a jury is going to find. That's a legal cause of action. I don't think it's appropriate for a court to enter the field of an equitable relief as owners as an injunction. And basically, it's essentially a mandatory injunction, which is even a higher standard that requires us to basically extend our contract past what everybody agreed to. And obviously, you know, we're not here to dispute the facts, but we do dispute, obviously, that the bank did anything wrong. But that said, they have a remedy at law that they can pursue. And the doctrine of unclean hands would not even be applicable unless the plaintiffs were able to establish these elements. And I don't think they have a protectable interest on an existing case law nor irreparable harm based on the record before this court. Well, I'm wondering about the RICO count that the court upheld, where they claim the bank apparently defrauded and stole money from the plaintiffs. You don't think the allegation of fraud is significant in this case as it relates to the contract? Not as it relates to the contract, Your Honor. I think that's the distinction. I don't think you properly made it. There's not a difference. RICO is a legal cause of action as well. It's basically a codification of fraud. They're saying that we failed to disclose that we knew their bad employees were stealing from them. And they have the right to try to bring that to trial. But to stop us from exercising our collection remedies is a dangerous path, I think, for the court to take. It would mean basically every mortgage foreclosure any bank was ever confronted with, we'd be forced with saying, you know, look, we think there might have been fraud in the procurement of the loan or something else. And so we want injunctive relief while this case is pending. And there's no authority that says that. In fact, the authority I've submitted to the court is really plain. The S&F case makes very clear that there's no protectable interest when the contract is fully performed. All the cases that I've seen, and all the ones submitted, and then even the ones by the plaintiffs also hold that if the contract were ongoing, and I'll give an example, and I put that in the footnote in the briefs, if we tried to terminate that agreement before October 30, 2022, I think they would have had a right to get employment or injunctive relief and say, look, you don't have the right to terminate that contract before it's expiration because we think we have fraud. But after that contract is fully performed, and based on the fact it was executed some two years prior to that, based on credit agreements that had their origin in 2016, I don't think they could ever present a case of a protectable interest. So the criminal enterprise that's alleged in RICO, you don't think that allows the court to use its equitable powers to issue an injunctive relief, an injunction? No, ma'am, I do not, particularly on the lack of any pleadings before the court asking or setting forth those elements. None of that put us on notice that they were doing that. If you look in the RICO count, there's no request for injunctive relief in the RICO count at all in the Fourth Amendment complaint. The motion for preliminary injunction, though, that puts you on notice as to what they were claiming, right? Well, it does with respect to the email agreements, Judge, but if you look at their motion for preliminary injunction, it was predicated upon email agreements that they contend modified the express business loan agreements. And those were defeated, correctly so, by the Illinois Credit Act because those were negotiations that were ongoing that never rose to fruition and a document was never signed by both parties. And so that's why the RICO claim is still merely a legal cause of action and a more organized or forceful fraud claim, if you will, than basically Illinois common law fraud. And the motion for preliminary injunction was never amended? No, ma'am, never amended, and it was filed, and if you look at it, I pointed out in the brief, it's totally based upon these alleged email agreements because that was when their Third Amendment complaint was still valid, is when they filed that motion. And when that case, when that count five of the Third Amendment complaint for declaratory judgment, the only place where they've ever asked formally for preliminary injunctive relief, that's what went before the court. And the court took up their motion for preliminary injunction based on those email agreements. And those email agreements cannot support a protectable interest for a couple reasons. One, the Illinois Credit Act says they can't because there's nothing in writing. And most importantly, before that happened, and even after that happened, they signed the agreements and agreed to pay in consideration for us extending the term two more years to pay us when due on October 30, 2022. Okay, thank you. Thank you, ma'am. Justice Welch, any questions? Justice McCain? No questions. All right, Mr. Johnson, does that conclude your argument? Yes, ma'am, it does. All right, you'll have a couple of moments after, or minutes after, Mr. Hanson. Mr. Hanson, I want to ask you a question before you even begin. And that is, what do you have to say about the fact that you have no pleading on file that mirrors the court's order? You have no motion for preliminary injunction that deals with the same issues that Mr. Johnson's talking about, that is, these emails that were dismissed in the third amended complaint. Justice Cates, I'm really glad you asked that question because I had scrapped my script and was going to go right to the motion for preliminary injunction. Because if you look at it, Mr. Johnson says it's predicated entirely on email agreements that have been dismissed by the trial courts. It's simply not true. I'm looking at page C763 of the appellate record. And what do we talk about? Sorry. What do we talk about? We talk about the double booking of loans. We talk about the scheme that gives rise to both the breach of contract claims and the RICO claims. That is what our motion for preliminary injunction is based upon by its terms. Yes, there is reference later after several paragraphs. I think the email agreements first get raised on page 3 of the motion for preliminary injunction in paragraph 11. So the first 10 paragraphs and the first two and a half pages of our motion for preliminary injunction is the double book loan schemes, which is what our breach of contract claim is based on and which is what our RICO claim is based on. So this notion that Mr. Johnson has put his whole case on, that we didn't ask for this, that we didn't put them on notice, it's simply false, Your Honor. Well, your complaint doesn't have a count for injunctive relief. That is correct, Your Honor. And that was, I'm a little bit confused because that was the argument that Mr. Johnson made in the trial court. That was the argument I thought he was making in his opening brief. And then when I rebutted it in our appellee's brief, his reply says, no, we're not making that argument at all. And the reason that I think he backed away from it is because the law is very clear and we cited the cases in our brief, both to the trial court and in our appellate brief, that a court of general jurisdiction, such as the Illinois trial court in this case, has absolute authority, provided of course all the steps are met, all the requisite elements are met, to enter injunctive relief to preserve the status quo, which is the last peaceable status of the parties. And in this case, there's no question but that both prior to the lawsuit being filed, also prior to the motion for preliminary injunction being filed, the last peaceable status was there is an unmatured note that is not ready to be collected. And frankly, I think even that point, the unmatured note point, doesn't make any sense as Mr. Johnson has presented it, and for two reasons. The first is, we filed our motion for preliminary injunction before the note had matured. And what happened was, rather than go forward on a very quick motion for temporary injunction, temporary restraining order, the parties agreed, Mr. Johnson agreed, you know what, we will effectively agree to a TRO pending the court's ruling on a preliminary injunction. And that was our status. He had basically self enjoined himself prior to the maturity of the note. And it was not until we actually had a hearing and Judge Sanders said he would take it under advisement, and I said, Your Honor, I want to make sure we're clear, pending you taking this under advisement and issuing a ruling, that the prior agreement is still in place. They are not going to seek to enforce this note during the pendency of the court's decision. And Mr. Johnson actually disagreed with that at first. Quite frankly, if you go back and look at the transcript, Judge Sanders got a little bit heated and said, are you telling me you're going to force me to issue a TRO at five o'clock in the afternoon? And Mr. Johnson backed off. He said, no, no, no, Your Honor, we'll keep that agreement in place. It's right there in the transcript. So there has never been a time from prior to the maturity of the note that they had the ability to enforce the note. This is not something where the court changed the status of the maturity of the note. It has been unmatured since the moment we filed our motion for temporary injunction restraining order, and Mr. Johnson agreed to that. So that's point number one. But point number two is a legal point, and we've cited the case law. The court of general jurisdiction has the ability to enter injunctions to prohibit exactly this type of conduct. And if you think about it, Your Honors, what would happen here if the trial court didn't act, or if we hadn't sought a preliminary injunction? Mr. Johnson would go and start a foreclosure action. At that point, then, we would be in a position of seeking to enjoin that foreclosure action. The question is not whether the trial court has the authority to do it. The question is simply, that question I think even Mr. Johnson admits, is of course the trial court has the ability to enjoin somebody from enforcing a note that is currently disputed and currently being litigated by the parties. And so the question is simply, does the court have the jurisdiction? And there's no question that the court does. And in terms of the remedy that the court fashioned in this particular case, Mr. Johnson calls it a mandatory injunction. It's absolutely not. The court did not change the terms of anything. We're actually, the bond that we've posted is paying the default interest at the note interest rate. And so everything about the note is still in place. If at the end of the day, the defendant prevails in this case, our clients will owe the amount on the note. And Mr. Johnson's client will execute on the bond to cover the default interest. And then it will presumably foreclose on the properties and foreclose on the UCC liens. And my client's home, farm, and business will be gone. The only thing the trial court did was say, I'm not going to make the home, farm, and business go proof during the pendency of this litigation. Because that amount that is due under the note, that $2.5 approximate million dollars, is the only reason that we owe that is because of the double booking loan scheme. Which again is the absolute basis of both the breach of contract claims and the RICO claim, which the trial court has held are viable claims that can proceed forward to trial. So I want to make sure that I'm understanding. Is it your position that the note has never matured? I think the note has matured as a sort of just as a pure temporal matter. I mean, it says it matured on October 30th of 2022. And that date has passed. My position is it has never been an enforceable note because we filed our motion for temporary restraining order. And Mr. Johnson agreed they would not enforce pending the court's ruling. So there's never been a point where Mr. Johnson could have gone and filed a foreclosure claim against either the farm or Mark Ward's home. Because he was either always enjoined by his own agreement or by the court's order. Didn't his agreement expire the second that the trial court issued its ruling? I think that's correct. But at that point, it was he was enjoined by the trial court's order. So the note has never been in a position where Mr. Johnson could have enforced it. But as a purely factual matter, again, just based on the date, it matured on October 30th, 2020, which is why we brought our motion for temporary restraining order before that date. But I think the court in paragraph five says that the plaintiff seek to prohibit defendant from enforcing its contract with plaintiff. As a result of plaintiff being in default, the agreement. So it seems to me that the court was looking at it at a time when there was a default. There's no question, again, purely sort of time and factual basis that on October 30th, 2020, our client, my client was obligated to pay the balance due on the note, and it did not do so. My my only point is not that the note matured, not that our client did not default on the note. It's that Mr. Johnson's client was never in a position where it could enforce the provisions of the note. What had an injunction not issued, but they have enforced the contract? Yes. Okay. So you're saying that because of their agreement on the TRO and then the entry of the preliminary injunction, they could never have sourced the contract. That is correct. I still don't understand why your Fourth Amendment amended complaint didn't include a counter preliminary injunction or injunctive relief. Well, because, Your Honor, we're not trying to we believe at the end of the day, this two and a half million dollars is an element of our damages. So if we win the lawsuit and it's it's a it's a not insignificant, but it's by no means the total sum of our damages are my clients were damaged up to approximately eight million dollars in this deal. But at the end of the day, if we receive what we asked for from the jury and a verdict of just say eight million dollars, we prove eight million dollars in damages. I'll leave off attorney's fees and trouble just under Rico. But say we get that that that damage award, we fully recognize that that will be offset by the two and a half million dollars that we owe on the note. I didn't ask. I didn't ask you that question. I asked you why you didn't include a counter injunctive relief injunctive. The injunction act says that there must be a complaint on file. It says there must be a legally sufficient complaint. It does not say that there must be a complaint that includes account for injunctive relief, Your Honor. And the reason is we're not asking for any permanent injunctive relief. We simply are not. We're not asking that this note go away. We acknowledge the note exists. And if our damages award is what we expect it will be at the end of the day, we recognize that there will be an offset. And so we're not asking to cancel the note or anything like that. Does that answer your question, Your Honor? I'm sorry if I missed it. I think it does. Okay. You want to proceed with your argument? Sure. Sure. I know that I've only got a little bit of time left, but I appreciate the questions. I think most of the arguments that Mr. Johnson raised were rebutted in our brief. The notion that my client's home, that the family farm, that their business, which has been in operation for nearly 50 years in Southern Illinois, are not protectable interests, I think is simply, it's nonsensical to suggest that. I'm sure Your Honors are well aware of the case law with regard to adequate remedy of law and irreparable harm. Both that particularly real estate, but also a business, are simply, those are, the loss of those things cannot be compensated by money damages. They simply cannot. And then the last point, the likelihood of success, I don't think there's any question, but that given the extraneous pleadings motions that have been filed by Mr. Johnson, including multiple motions for reconsideration, et cetera, there are very well stated claims here.  Overall, I think there's, especially on the breach of contract, I think those are summary judgment claims in favor of the plaintiff. The contract very clearly says that the bank was supposed to only provide loans if requested by Ron or Mark Ward, and there's no question that these double book loans were not requested by Ron and Mark Ward. Whether we're able to ultimately approve RICO claims, that obviously will be, we've got more discovery that we've got to take on that point, and we've got more proof that we've got to present on that point. Probably will not be a summary judgment, but I feel like we were very strong in terms of being able to present that to the jury. And then you get to the balance of hardships, Your Honor, and the bank is losing nothing here. They've got the same amount due with the same collateral at the outset. The only harm they could possibly be facing by virtue of this injunction is the default interest, and we have bonded that. The default interest is fully bonded, and so there is absolutely no harm to the bank. Meanwhile, we are literally talking about my client's home and my client's family farm, and if Mr. Johnson enforces the blanket UCC lien on the business, my clients lose their franchise with Chrysler. And I know my time has expired. I appreciate you letting me go go past your honors. If there's any other questions, I'm happy to answer them. Otherwise, that will conclude my argument. All right. Justice Welch, any questions? Justice McCain? No questions. All right. And Mr. Hanson, in the future, if you have to get up, I would ask that you try to remain in your seat while Mr. Johnson is speaking. I apologize for that, Your Honor. Somebody started mowing the lawn outside, and I felt that would be even more disruptive. I apologize. I appreciate it. Thank you. Mr. Johnson, rebuttal? Yes, ma'am. Having a look at the motion preliminary injunction, it's basically 25 paragraphs. The first 10 or so are basically background. Paragraphs 13 to 28 are all based on the email agreements that were dismissed. That's in the record before the court. But most importantly, I didn't hear the plaintiffs ever address the lack of a protectable interest when you have a fully executed contract. And this is a fact that I want to be very clear to the court. It's in the record and it's in our brief that the plaintiffs themselves say they found out about the double booking back in December 2018. Nonetheless, they signed the new loan agreements with us in October of 2020, two years later, knowing that they had to pay us in full two years thereafter in October of 2022. It's therefore disingenuous to think that we somehow duped them into signing something when we were concealing this fact from them. Their very own pleadings, and I have it in my brief, said they knew about this scheme in December of 2018, yet they signed the document that they knew they had to pay us in October of 2020. Secondly, counsel's got the TRO and preliminary injunction totally wrong. The reason I agreed to set the matter over the temporary restraining order is because it wasn't necessary. At the time, this thing was filed, I think, in October of 2021. I informed the court, and it's in the record, that I'd rather just have one hearing. Judge will agree not to foreclose anything for the next couple of weeks until the court can set this matter before hearing for plenary injunction. Unfortunately, things interceded. Judge Sanders had to continue to respond, and it took months for us to get this finally heard in February. So, three or four months later, my agreement that I thought would be resolved in a matter of a few weeks turned out to be several months. It still doesn't dismiss the fact that these pleadings improve. Having jurisdiction to enter order is different than having the ability to do it based upon a complaint and based upon the record. In this case, simply the affidavits. Now, the hyperbole that they can't escape, they're telling you you're going to lose a house or farm or business. Look at their affidavit. Compare their affidavit to ours on irreparable harm. They have never addressed the fact that they have a net worth of $19 million. They've never talked about that fact. They've never even addressed the Cantor case that says if a plaintiff has the ability to pay, they can do so, then it's not irreparable harm. They've not addressed the S&F case in their brief that says you have to have a protectable interest, and you can't have one in a fully executory or fully reformed contract. That's citing the case of Gates or, excuse me, Gage v. Willmette, which is the Illinois Supreme Court case. When they don't do that and they haven't addressed that, they don't have a protectable interest, whether they filed it correctly or not procedurally, because if you don't have that protectable right, whether you plead it or not, they still lose, because they don't have a right to make us extend a contract beyond the term that we had agreed upon after they knew about this so-called scheme of fraud. Yes, ma'am. Are you familiar with the case of Happy Securities v. Ag Resources? Yes, ma'am. That was mentioned in one of these cases, in one of the briefs. I think I may have mentioned it. Well, in that case, the signing of a mortgage brought a foreclosure action against the defendants, and the petition for injunction was granted. The court found that that was acceptable. Right, and the massive distinction in that case and with every single case that's been put before this court is those were contracts or mortgages that were still in effect. They had not matured. That is the single biggest distinguishing factor of that case and all the others considered here. If, during the course of a mortgage, there is an allegation of wrongdoing, then a court certainly has the power, if they find irreparable harm, and again, we don't think there's any irreparable harm here, but even if there were, assume there are for purposes of this motion, then that contract was still in effect. It's not fully executed. It's an executory contract, and yes, the court has power to do that, but I've not found one case, and I would challenge the court, I've not seen one case in Illinois, other than ones that favor us, the S&F case, that say you cannot, an Illinois Supreme Court case says you cannot grant an injunction on the discontinuance or performance of an executory contract. And that American Express case we've cited is directly on point. If you have a right to terminate the agreement like they did in American Express, American Express had a 30-day right to terminate, and the court found that, then that killed the protectable right. We're stronger. We have a matured contract, not a contract in the middle of a mortgage like the Happy Securities case or any of the other cases, and that's the big distinguishing portion for us, and that's why the court was improvident in granting the preliminary injunction, because no protectable interest existed. Okay. I have to stop you there. Thank you all for participating in this argument today. It's obviously very interesting. It's important for you, but we will take the matter under advisement and issue an order in due course. Have a great day.